## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| CESAR BUSTOS, *et al.*, | § | |
| | § | No. 4:22-CV-02690 |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| INVIERTE EN TEXAS, LLC, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

This is a fraud case.[1]  Plaintiffs Cesar Bustos and Advance Investment Latam, LLC's ("Advance") (collectively "Plaintiffs") allege that they were defrauded by Defendants Invierte en Texas, LLC ("Invierte"), Karina Hernandez, Invest and Migrate to USA, LLC ("Invest and Migrate"), Juan Carlos Martinez Cecias Rodriguez ("Mr. Martinez"), Cecilia Miranda, Rhinopro Ceramics, LLC ("RPC"), M&D Corporate Solutions, LLC ("M&D"), Comar Holdings, LLC ("Comar"), Mara 6 Holdings, LLC's ("6 Holdings"), Mara 6 Investments, LLC ("6 Investments"), Rhino Linings Corporation ("Rhino Linings"), and RhinoPro Truck Outfitters ("RPT") (collectively, "Defendants"). ECF No. 1. Pending before the Court are

---

[1] The district judge to whom this case is assigned referred the motions addressed herein pursuant to 28 U.S.C. § 636. Order, ECF Nos. 11, 20. A motion to dismiss is dispositive and therefore is appropriate for a report and recommendation. 28 U.S.C. § 636 (b)(1)(A).

various motions to dismiss: Comar's motion to dismiss, ECF No. 7; Mr. Martinez's motion to dismiss, ECF No. 8; RPC's, 6 Holdings, and 6 Investments motion to dismiss, ECF No. 9; Ms. Miranda's motion to dismiss, ECF No. 17; and Rhino Linings motion to dismiss, ECF No. 19.[2] In this action, Plaintiffs allege that Defendants' fraudulent investment scheme caused them harm.

The issue before the Court is whether Plaintiffs' complaint should be dismissed for failing to state a claim. ECF Nos. 7, 8, 9, 17, 19. In their complaint, Plaintiffs advance claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., common law fraud, fraud in the inducement, violation of the Texas Deceptive Trade Practices Act ("DTPA"), fraudulent transfer, and civil conspiracy.[3] After thoroughly considering Plaintiffs' complaint, the briefing,[4] and the applicable law, the Court recommends that Plaintiffs' complaint be dismissed because it fails to state a claim.

## I.   BACKGROUND

Mr. Bustos is a resident of Mexico and Advance is a Texas limited liability company. ECF No. 1 ¶¶ 3-4. Plaintiffs claim that the Defendants marketed

---

[2] The motions to dismiss, other than Miranda's, are virtually identical.

[3] Count six of Plaintiffs' complaint also alleges alter ego; however, that is not a cause of action. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) ("Alter ego is not a claim or independent cause of action-it is a remedy to enforce a claimed substantive right.").

[4] Plaintiffs filed responses to Defendants motions to dismiss. ECF Nos. 14, 15, 16, 21, 22.

fraudulent RhinoPro "franchise" opportunities to foreign nationals who wanted to invest in the United States, many for the purpose of obtaining visas for permanent residency and eventually towards American citizenship *Id*. ¶¶ 20, 31. Plaintiffs further allege that this scheme was carried out over several years, using at least five interrelated companies, marketing to potential investors in Mexico, Taiwan, Vietnam and other countries, and has victimized dozens of investors. *Id*. ¶¶ 20-24. The scheme used the postal service, email, telephone, and wire transmissions to communicate with investors and transfer money from the investors to Defendants. *Id*. ¶ 21.

Mr. Martinez worked with Ms. Hernandez, nonparties Uberwurx, LLC and Mobile Coating Management ("MCM"), and others to "help investors set up bank accounts and incorporate a limited liability company with which to 'run' and 'operate' their RhinoPro business." *Id*. ¶ 26. The scheme required investors to sign two contracts, one with Uberwurx and one with MCM. *Id*. ¶ 27. The contract required the payment of an amount for a license, not a franchise as initially represented, to use RhinoPro products and granted the right to use certain associated trademarks and tradenames. *Id*. ¶ 28. Each investor was to receive a RhinoPro Mobile van fully equipped to spray bedliners into trucks. Rhino Linings manufactured and sold the liquid liner. *Id*. ¶ 30.

At some point prior to March 19, 2019, Mr. Martinez, Ms. Hernandez, RPC,

and RPT, Uberwurx, and MCM convinced Mr. Bustos to form Advance for the purpose of investing in a RhinoPro Mobile van and certain licensing rights to use spray-on truck bed liners marketed as RhinoPro Mobile. *Id*. ¶ 32. Mr. Bustos was interested in the investment opportunity only, not the visa program. *Id*. ¶ 31. On March 19, 2019, Ms. Hernandez informed Mr. Bustos that he should sign his RhinoPro contract to take advantage of the 11% annual returns offered from the investment. *Id*. ¶ 34. On March 19, 2019, Bustos and Advance[5] signed a Refund Deposit Agreement and Uberwurx License Agreement. *Id*. Within days, Mr. Bustos formed Advance to manage and operate the franchises. *Id*. ¶ 35. Mr. Martinez also convinced Mr. Bustos to sign a Management and Administrative Services Agreement. *Id*. On April 4, 2019, Mr. Bustos wire transferred $25,000 to Uberwurx. *Id*.; ECF No. 1-1 at 1. On May 7, 2019, pursuant to the agreements, Mr. Bustos wire transferred an additional $152,000. ECF No. 1 ¶ 35.[6]

According to the complaint, Mr. Martinez did not disclose to investors that MCM and its employees would manage the RhinoPro vans and investors would not be involved. *Id*. ¶ 36. Under this arrangement, RhinoPro franchises were rarely, if ever, profitable as their returns were capped. *Id*. ¶¶ 34, 37. Plaintiffs have not made 11% returns on their investment. *Id*. ¶ 37.

---

[5] According to the complaint, Advance had not yet been formed at this time. ECF No. 1 ¶ 35.

[6] The exhibit does not show to whom the $152,000 was wire transferred.

Plaintiffs assert claims for RICO against all Defendants; claims for fraud and fraudulent inducement against Mr. Martinez, Ms. Hernandez, RPC and RPT; claims for violations of the DTPA against Mr. Martinez, Ms. Hernandez, RPC and RPT; a claim for fraudulent transfer against Mr. Martinez; and civil conspiracy against Mr. Martinez, RPC, RPT, and Rhino Linings. *Id.* ¶¶ 39-53. Plaintiffs allege that both Mr. Martinez and Ms. Hernandez are under indictment for their actions in this scheme. *Id.* ¶ 1.[7]

## II.   THE STANDARD FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content

---

[7] *See id*. n.1 (citing *United States of America v. Juan Carlos Martinez Cecias Rodriguez and Karina Hernandez*, No. SA-21-CR-00533-FB, pending in the United States District Court for the Western District of Texas—San Antonio Division; *United States of America v. Juan Enrique Kramer, Adrianna Pastor, Noel Olguin, and Karina Hernandez*, No. SA-21-CR-0154-FB, pending in the Western District of Texas—San Antonio Division).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement," though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id*. Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs.'" *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Boudreaux v. Axiall Corp.*, 564 F. Supp. 3d 488, 498 (W.D. La. 2021). "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 322 (E.D. Tex. 2021) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)). Significantly, the

court should not evaluate the merits of the allegation but must satisfy itself only that the plaintiff has adequately pleaded a legally cognizable claim. *Bright v. City of Killeen, Texas*, 532 F. Supp. 3d 389, 396 (W.D. Tex. 2021) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

When alleging fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s particularity requirement has long played a screening function, standing as a "'gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.'" *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1116 (S.D. Tex. 2020) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)).

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF.

Defendants' motions to dismiss ask the Court to dismiss Plaintiffs claims for RICO, common law fraud, fraudulent inducement, violations of the DTPA, fraudulent transfer, and civil conspiracy. The Court evaluates each of Plaintiffs' claims below.

### A. Plaintiffs Fail to State A RICO Claim.

Defendants argue that Plaintiffs failed to state a claim under RICO. They argue that Plaintiffs failed to plead (1) the necessary predicate acts and pattern of racketeering activity; (2) reliance in connection with Plaintiffs' mail and wire fraud

claims;[8] (3) a cognizable RICO enterprise; and (4) conspiracy under § 1962(d). ECF No. 7 at 6-12. Plaintiffs respond that they have sufficiently pleaded their RICO claims to survive Defendants' motions to dismiss. ECF No. 14 at 2-11.[9]

### 1. *RICO prohibits a pattern of racketeering activity.*

"Congress enacted RICO in order to prohibit conduct involving a pattern of racketeering activity." *See Alvarez v. Rosas*, No. H-18-4646, 2020 WL 2061491, at *4 (S.D. Tex. April 29, 2020) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006); *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the RICO's substantive restrictions." *Id*. (quoting *Anza*, 547 U.S. at 453 (quoting 18 U.S.C. § 1964(c))).

To state a § 1962(c) civil RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Arruda v. Curves Int'l, Inc.*, No. 6:20-CV-00092-ADA, 2020 WL 4289380, at *3 (W.D. Tex. July 27,

---

[8] Although Defendants argue Plaintiffs' RICO claim must be dismissed because it failed to plead reliance in connection with its mail and wire fraud predicate acts, ECF No. 7 at 8-9, "mail fraud and its place in RICO framework are different from a case alleging common-law fraud, and one of the differences is the lack of a reliance requirement," *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015). Therefore, Defendants' argument on this point lacks merit.

[9] Defendants also seek dismissal of Plaintiffs' RICO conspiracy claim. ECF No. 7 at 12-13. Plaintiffs oppose dismissal of their RICO conspiracy claim. ECF No. 14 at 10-11. Based on a review of Plaintiffs' complaint, however, Plaintiffs have not pleaded a RICO conspiracy claim under § 1962. ECF No. 1 ¶¶ 40-42.

2020), *aff'd*, 861 F. App'x 831 (5th Cir. 2021). An act of "racketeering activity," commonly referred as a "predicate act," is defined to include criminal acts such as mail and wire fraud and any act indictable under the Immigration and Nationality Act. *See* 18 U.S.C § 1961 (defining "racketeering activity"); *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (referring to racketeering activity as a "predicate act"). To rise to the level of "racketeering activity" there must be two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. *Alvarez*, 2020 WL 2061491, at *4 (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church*, 90 F.3d at 122)).

When RICO claims are based on allegations of fraud, such as wire or mail fraud, they are subject to the Rule 9(b) heightened pleading burden imposed. *Arruda*, 2020 WL 4289380, at *3. "'[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Ross v. City of Dallas, Texas*, No. 3:17-CV-0570-L, 2018 WL 1569905, at *5 (N.D. Tex. Mar. 30, 2018) (quoting *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997)).

### 2. *Plaintiffs do not sufficiently allege racketeering activity.*

Defendants argue that Plaintiffs have failed to sufficiently plead racketeering

activity because their complaint does not plead two or more predicate acts. ECF No. 7 at 6-7. Plaintiffs argue that they have adequately pleaded acts of mail and wire fraud to satisfy their burden. ECF No. 16 at 3. "The elements of wire fraud, as set out in 18 U.S.C. § 1343, are: (1) a scheme to defraud, (2) the use of wire communications, and (3) a specific intent to defraud." *United States v. Deason*, No. 14–10461, 2015 WL 4709584, at *2 (5th Cir. 2015).

Plaintiffs allege that Ms. Hernandez engaged in wire fraud when she represented that the rate of return on Plaintiffs' investment would be 11% in a March 19, 2019 email. ECF No. 16 at 3; ECF No. 1 ¶ 44. This allegation satisfies the who, what, and where of Rule 9(b). *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). However, it critically does not explain why the statement was fraudulent when made. *Paul v. Aviva Life & Annuity Co.*, No. 3:09-CV-1490-B, 2011 WL 2713649, at *5 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's RICO claim in part because they failed to allege that mail and wire fraud representations were false when made). Plaintiffs attempt to satisfy this requirement by alleging that Ms. Hernandez's representation was "belied by the management contract, which limits Busto's return to a maximum of $3,062.50 a month, for a total of $36,750 a year," and this amount is not 11% of a $525,000 investment.  ECF No. 1 ¶ 34. The inference Plaintiffs attempt to draw is that Ms. Hernandez's representation was false when made because Plaintiffs could

not have earned the promised 11% on their investment. This would be true if Plaintiffs invested $525,000, but, as alleged, Plaintiffs only invested $175,000 and they fail to allege how much they have received in return. ECF No. 1 ¶ 32. Instead, Plaintiffs allege that they "are far from the promised 11% in returns and [Defendants] have sourced their funding through new investment fees rather than the income of the established business." ECF No. 1 ¶ 37. This does not show that Ms. Hernandez's representation was fraudulent when made. *Alufase USA LLC v. Palma*, No. CV H-16-77, 2016 WL 3911127, at *3 (S.D. Tex. May 6, 2016), *report and recommendation adopted in part*, No. CV H-16-77, 2016 WL 3906780 (S.D. Tex. July 14, 2016) (dismissing wire fraud allegations for failing to explain how the statement was fraudulent). A failure to perform, in and of itself, is not fraud. *Cavazos Ramirez v. Laredo Nat'l Bank*, No. CV M-10-09, 2013 WL 12394256, at *13 (S.D. Tex. Sept. 30, 2013) ("A mere breach of contract, even breach of an unenforceable contract, is not fraud.").

Plaintiffs allege two additional wire fraud predicate acts in support of their RICO claim. Plaintiffs argue the "transfer [of] funds to Defendants via wire transmission" was an act of wire fraud because it "provid[ed] a means through which [Defendants] could secure money from Plaintiffs." ECF No. 16 at 3. Based on their complaint, Plaintiffs contend that Ms. Hernandez's misrepresentation caused them to transfer $25,000 and $152,000 on April 4, 2019 and May 7, 2019. ECF No. 14

at 3. The transfers were allegedly made "[p]er the agreements with Defendants." *Id*.

¶ 35. These alleged acts of wire fraud are also based on Ms. Hernandez's

representation regarding the rate of return. As a result, they too fail to satisfy Rule

9(b)'s particularity requirement because Plaintiffs fail to allege that Ms. Hernandez

knew the statements were fraudulent when made. *Aviva*, 2011 WL 2713649, at *5

(finding that plaintiff failed to plead wire fraud predicate acts where they failed to

"sufficiently alleged the fraud underlying their claims of wire and mail fraud").

Accordingly, the complaint fails to sufficiently plead the mail and wire fraud

predicate acts.

### 3. *Plaintiffs fail to allege a cognizable RICO enterprise.*

To plead a civil RICO claim, a plaintiff must allege that an enterprise exists.

*Alufase*, 2016 WL 3911127, at *4. An enterprise is defined as "a group of persons

or entities associating together for the common purpose of engaging in a course of

conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

Although Plaintiffs' complaint does not identify what type of enterprise Defendants

engaged in, Plaintiffs state in their briefing that they allege the existence of an

association-in-fact enterprise. ECF No. 14 at 7-8. An association-in-fact enterprise

"(1) must have an existence separate and apart from the pattern of racketeering; (2)

must be an ongoing organization; and (3) its members must function as a continuing

unit as shown by a hierarchical or consensual decision making structure." *Allstate*

*Ins. Co. v. Plambeck*, 808 F.3d 665, 673 (5th Cir. 2015) (quoting *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991)).

Plaintiffs allege that "Defendants Martinez, Hernandez, RhinoPro Ceramics, and RhinoPro Truck Outfitters, along with non-parties Uberwurx and MCM, conducted an enterprise aimed at obtaining fraudulent visas for purposes of eventually obtaining citizenship." ECF No. 1 ¶ 40. Plaintiffs also contend that they pleaded facts sufficient to allege that the alleged enterprise had the purpose of "steal[ing] money from foreign investors by pitching fraudulent franchises as investment opportunities." ECF No. 14 at 8. No other purpose, feature, or function of the enterprise is alleged. "This is obviously not sufficient to plead the existence of an enterprise 'separate and apart from the pattern of racketeering activity in which it engages.'" *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (quoting *Whelan*, 319 F.3d at 229) (dismissing RICO claim where plaintiff alleged that "defendants formed the enterprise specifically to commit the very criminal acts at issue in the complaint—nothing beyond that").

Plaintiffs concede that their complaint does not allege that the purported enterprise had any existence separate and apart from the racketeering activity. ECF No. 14 at 7-8. Instead, they contend that such allegations are not required because "evidence of racketeering activity may be sufficient to infer the existence of an association-in-fact enterprise." *Id.* at 8 (citing *Boyle v. United States*, 556 U.S. 938

(2009)). *Boyle* is inapplicable here. In *Boyle*, the Supreme Court addressed what evidence was sufficient to sustain a *criminal RICO conviction*, not what must be pleaded in a civil case. 556 U.S. at 941. In civil cases, Fifth Circuit precedent requires that a cognizable RICO enterprise "must exist for purposes other than just to commit predicate acts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019). Recently, the Fifth Circuit reiterated this requirement in affirming a district court's dismissal of a RICO claim, finding that the "allegations fail[ed] to state the existence of an enterprise that is 'an entity separate and apart from the pattern of racketeering activity in which it engages,' and as such, fails to state a claim under RICO." *Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, at *5 (5th Cir. June 5, 2023) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The same result is required here. This requirement is consistent with Congress's intention to "'prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law.'" *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995)).

Accordingly, Plaintiffs' RICO claim should be dismissed because it fails to plead a cognizable RICO enterprise in addition to failing to plead the predicate acts.

### B. Plaintiffs Fail To State A Claim For Common Law Fraud Or Fraudulent Inducement.

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false;

14

(4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as 'an underlying contract which was induced." *Stanissis v. Dyncorp Int'l LLC*, No. 3:14-CV-2736-D, 2016 WL 4159397, at *5 (N.D. Tex. Aug. 5, 2016). Claims of fraud must comport with Rule 9(b)'s particularity requirement. *Sanderson v. Allstate Fire & Cas. Ins. Co.*, No. CV H-22-3536, 2023 WL 417478, at *2 (S.D. Tex. Jan. 25, 2023).

### 1. Plaintiffs' common law fraud and fraudulent inducement claims are not barred by the economic loss rule.

RPC argues that Plaintiffs' common law fraud claim is barred by the economic loss rule. ECF No. 9 at 17-18. In general, the economic loss rule "precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718-19 (Tex. 2014) (per curiam). The economic loss rule only applies to

unintentional torts. *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). Because fraud is an intentional tort, the economic loss rule does not apply. *Fuller v. Le Brun*, 616 S.W.3d 31, 45 (Tex. App. 2020, pet. denied).

### 2. Plaintiffs' common law fraud and fraudulent inducement claims fail to satisfy Rule 9(b).

Plaintiffs allege that Mr. Martinez, Ms. Hernandez, RPC, and RPT Outfitters made false representations to Plaintiffs that their investment would (1) purchase a RhinoPro Mobile franchise, truck accessories store, and fully equipped van, and (2) yield a guaranteed rate of return of 11%. ECF No. 1 ¶ 44. These allegations fail to meet the pleading requirements of Rule 9(b) as required for both Plaintiffs' common law fraud and fraudulent inducement claims.

First, Plaintiffs' allegation regarding the representation that their investment would purchase a RhinoPro Mobile franchise, truck accessories store, and fully equipped van is wholly general and lacks the particularity required under Rule 9(b). Plaintiffs do not allege when, where, how, or by whom this representation was made. *Sanderson*, 2023 WL 417478, at *2 (dismissing claim where "[t]he who, what, when, and where required by Rule 9(b) is missing"). Further, Plaintiffs do not offer any explanation for how this representation was false when made. *Shandong*, 607 F.3d at 1033 (dismissing fraud claim for failing to sufficiently allege that statement was false when made). In fact, it is not clear from Plaintiffs' complaint whether the statement was false, as the complaint does not allege that Defendants failed to deliver

to Plaintiffs. Instead, Plaintiffs offer only the conclusory allegation that "although Defendants contracted to provide each investor with their own van and their own territory, this did not often occur." ECF No. 1 ¶ 37. Therefore, it is not clear what, if anything, Plaintiffs received in exchange for their investment.

Plaintiffs' allegation of fraud regarding a representation of a guaranteed 11% rate of return on their investment is also deficient. First, the complaint does not plead facts supporting that Ms. Hernandez knew her statement was false or made the representation recklessly and without knowledge of its truth. *Shandong*, 607 F.3d 1032-33. As explained above, Plaintiffs attempt to support such an inference by alleging that the management contract limited the investment's rate of return to $36,750, and that, therefore, it would not produce an 11% return "on a $525,000 investment." ECF No. 1 ¶ 34. Although that is true for a $525,000 investment, Plaintiffs' investment was for only $175,000. Therefore, this does not support an inference that Ms. Hernandez's representation was false when made. *Perry v. U.S. Bank, N.A.*, No. CIV.A. H-13-3362, 2014 WL 3407077, at *4 (S.D. Tex. July 9, 2014) (dismissing common law fraud claim where plaintiff failed to allege "what indicates the representative knew his statement was false when made"); *Junior Volleyball Ass'n of Austin v. Summit Hosting LLC*, No. 1:17-CV-756-LY, 2018 WL 4343446, at *5 (W.D. Tex. July 17, 2018), *report and recommendation adopted*, No. 1:17-CV-756-LY, 2018 WL 4343430 (W.D. Tex. Aug. 6, 2018) (dismissing

fraudulent inducement claim on this same basis).

Further, the allegations also fail to satisfy Rule 9(b) because they fail to offer any explanation as to "why [Ms. Hernandez's] statement[ was] fraudulent." *Wesolek v. Pac. Hunt Energy Corp.*, No. CV H-20-2537, 2021 WL 3775635, at *4 (S.D. Tex. Aug. 10, 2021*), report and recommendation adopted*, No. CV H-20-2537, 2021 WL 3772407 (S.D. Tex. Aug. 25, 2021). Plaintiffs' allegation that they "are far from the promised 11% in returns and have sourced their funding through new investment fees rather than the income of the established business" does not cure this deficiency. ECF No. 1 ¶ 34. That Plaintiffs ultimately did not receive what was promised is not sufficient for an inference of fraud. To allow such a "logical leap would transform every breach of contract case into a fraud claim." *Wesolek v. Pac. Hunt Energy Corp.*, No. CV H-20-2537, 2021 WL 3775635, at *5 (S.D. Tex. Aug. 10, 2021), *report and recommendation adopted*, No. CV H-20-2537, 2021 WL 3772407 (S.D. Tex. Aug. 25, 2021).

Accordingly, Plaintiffs' claims for common law fraud and fraudulent inducement should be dismissed.

### C. Plaintiffs Fail To Plead A Violation Of The Texas Deceptive Trade Practices Act.

To state a claim under the Texas Deceptive Trade Practices Act ("DTPA"), a plaintiff must show: "(1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant violated a specific provision of the DTPA; and

(4) the defendant's violation is a producing cause of plaintiff's damages." *Henry v. CitiMortgage, Inc.*, No. 4:11-CV-83, 2011 WL 2261166, at *6 (E.D. Tex. May 10, 2011) (citing Tex. Bus. & Com. Code Ann. §§ 17.41–17.63); *see Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). In federal courts, claims under the Texas Deceptive Trade Practices Act are "subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016) (citing *Omni USA, Inc., v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011)).

Plaintiffs claim that Mr. Martinez, Ms. Hernandez, RPC, and RPT Outfitters violated the DTPA by representing that Plaintiffs' investment would yield an 11% return and that Plaintiffs would receive a truck accessories store and fully equipped van. ECF No. 1 ¶ 47. According to the complaint, these representations violated Sections 17.46(b)(5), (7), and (9) of the DTPA.

### 1. *Plaintiffs are consumers under the DTPA.*

Defendants argue that Plaintiffs are not consumers under the DTPA. ECF No. 8 at 19. Under the DTPA, a consumer is defined as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4). According to Defendants, Plaintiffs' investment and agreements were for licensing agreements and management services, and, therefore, Plaintiffs were not consumers because their DTPA claim does not concern goods or services. ECF

No. 8 at 9. As a starting point, Plaintiffs agreement with MCM for management services is clearly an agreement for the provision of *services*. But regardless, as pleaded, Plaintiffs' primary objective in entering into an agreement with Defendants was to acquire a "RhinoPro Mobile franchise." ECF No. 1 ¶ 45. Texas courts have repeatedly held that a party seeking to acquire a franchise is a consumer under the DTPA. *In re Carroll*, 464 B.R. 293, 325 (Bankr. N.D. Tex. 2011), *aff'd sub nom. Carroll v. Farooqi*, 486 B.R. 718 (N.D. Tex. 2013) (citing *Texas Cookie Co. v. Hendricks & Peralta*, 747 S.W.2d 873, 876-77 (Tex. App.-Corpus Christi 1988, writ denied)). Further, the acquisition of a RhinoPro Mobile Franchise included "truck accessories store and a fully equipped van." ECF No. 1 ¶ 47. Therefore, Plaintiffs are consumers under the DTPA.

### 2. *Plaintiffs fail to plead claims with the specificity required to satisfy Rule 9(b).*

Plaintiffs' allegations regarding the representation that their investment would purchase a RhinoPro Mobile franchise, truck accessories store, and fully equipped van are not made with particularity. *See supra* § III(B)(2). Plaintiffs fail to specify who made the false statements, when they were made, or what form they took. *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *6 (S.D. Tex. Oct. 7, 2019) (dismissing DTPA claims for failing to satisfy Rule 9(b)); *see also Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 479 (E.D. Tex. 2021) (dismissing DTPA claims where plaintiff failed to "identify the name of the speaker, identify when the

statement was made, and identify where it was made in all but one his statements"). "To reach the requisite level of particularity, Plaintiff[s] needed to name the individuals who made false representations to [them], and recount specific statements that were false representations." *Id*. Plaintiffs have not done so.

Plaintiffs' allegations regarding Ms. Hernandez's representation of the investment's rate of return also fail to satisfy Rule 9(b). Plaintiffs' complaint does not "plead how [the] alleged statement[] made by [Ms. Hernandez was] false or misleading. *Franklin*, 569 F. Supp. 3d at 479 (dismissing DTPA claims on this basis); *see also Barnett v. Forest River, Inc.*, No. 9:17-CV-99, 2017 WL 7733052, at *3 (E.D. Tex. Nov. 29, 2017) (dismissing DTPA claim because plaintiff failed to "explain why [the representation] was false, misleading, or deceptive").

### D. Plaintiffs Fail To State A Claim For Fraudulent Transfer.

To prevail on a Texas Uniform Fraudulent Transfer Act ("TUFTA") claim, a plaintiff must prove that (1) she is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204– § 24.005(a)(1)).

Plaintiffs allege two separate claims under the TUFTA. The complaint alleges that Mr. Martinez violated Section 24.005(a)(1) by transferring money or property

"for the purpose of hindering, delaying, or defrauding Plaintiff creditors." ECF No.1 ¶ 49. Claims under Section 24.005(a)(1) are claims for actual fraudulent transfer and must satisfy Rule 9(b). *Campbell v. Texas Tea Reclamation, LLC*, No. 3:20-CV-00090, 2021 WL 2211690, at *5 (S.D. Tex. May 6, 2021), *report and recommendation adopted*, No. 3:20-CV-90, 2021 WL 2211807 (S.D. Tex. June 1, 2021). Alternatively, Plaintiffs allege that Mr. Martinez transferred money or property "without receiving equivalent value in exchange for the transfer, and was engaged or was about the be engaged in a transaction for which his remaining assets were unreasonabl[y] small in relation to the transaction, or intended to incur, or believed or reasonably should have believed, that he would incur debt beyond his ability to pay as the debt became due" or "without receiving reasonably equivalent value in exchange for the transfer and he was insolvent at the time of the transfer or became insolvent because of the transfer." ECF No. 1 ¶ 49. Such constructive fraudulent transfer claims are not subject to Rule 9(b)'s heightened pleading standard because constructive fraudulent transfer focuses on the "debtor's financial condition and the sufficiency of the consideration," not an actual intent to defraud. *Campbell*, 2021 WL 2211690, at *6. Regardless of whether evaluated under Rule 9(b) or Rule 8, Plaintiffs fail to state a claim under TUFTA.

Under Rule 9(b) Plaintiffs' complaint at a minimum fails to supply the what and when of the fraudulent transfer. The complaint does not contain any factual

allegations regarding the amount of money or identify any property that was allegedly transferred. *Campbell*, 2021 WL 2211690, at *6 (dismissing claim for failing to identify what was transferred). Plaintiffs also do not allege when such an alleged transfer took place. *Id*. (dismissing claim for failing to identify when the transfer took place).

Similarly, Plaintiffs' constructive fraudulent transfer claims do not provide Defendants the notice required under Rule 8. To satisfy Rule 8, Plaintiffs must plead specific facts in support of their claim, not bare, unsupported allegations. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not establish facial plausibility."). Here, Plaintiffs simply allege generally the elements of the cause of action without offering any specific facts. *See Twombly*, 550 U.S. at 555. ("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Because Plaintiffs fail to offer factual allegations supporting their conclusory assertion that Mr. Martinez violated TUFTA, his constructive fraudulent transfer claims under §§ 24.005(a)(2) and 24.006(a) fail.

Accordingly, Plaintiffs claims under TUFTA should be dismissed.

### E.  Plaintiffs Fail To State A Claim For Civil Conspiracy.

"In Texas, a civil conspiracy is a combination by two or more persons to

accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). The essential elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy is a "derivative tort," meaning it depends on some underlying tort or other illegal act. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("Our use of the word 'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it."). Therefore, because Plaintiffs have not met their burden on any of their underlying claims, their conspiracy claim also fails.

## IV.   PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND.

Plaintiffs seek leave to amend their claims against Defendants. ECF No. 14 at 5.  Rule 15 of the Federal Rules of Civil Procedure directs courts to "freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). Nonetheless, leave to amend is within the sound discretion of the court and can be appropriately denied when "it is clear that the defects [of a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Plaintiffs have not amended their complaint since filing this action, and it does not appear that they have pleaded their best case. "When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissal with prejudice." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 802 (S.D. Tex. 2021). Therefore, the Court concludes that Plaintiffs should be afforded an opportunity to amend their complaint to sufficiently state a claim for relief.

Further, Plaintiffs make no specific allegations regarding what actions Invierte, Ms. Miranda, Invest and Migrate, and M&D took that would expose them to liability. *See* ECF No. 17. Therefore, Plaintiffs' complaint does not allege "sufficient facts from which . . . the defendants can fairly appreciate the claim made against them." *Pettieway v. Strent*, No. 2:23-CV-00009, 2023 WL 2617038, at *2 (W.D. La. Mar. 23, 2023). In amending their complaint, Plaintiffs must comply with Rule 8 and provide facts to establish what [each] defendant did" that gives rise to liability. *Id*.

## V.   CONCLUSION

Therefore, the Court **RECOMMENDS** that Comar's motion to dismiss, ECF No. 7, should be **GRANTED,** Mr. Martinez's motion to dismiss, ECF No. 8, should be **GRANTED**, RPC, MARA 6 Holdings, LLC, and Mara 6 Investments, LLC's motion to dismiss should be **GRANTED**, Ms. Miranda's motion to dismiss, ECF

No. 17, should be **GRANTED**, and Rhino Linings Corporation's motion to dismiss, ECF No. 19, should be **GRANTED**. The Court **FURTHER RECOMMENDS** that Plaintiffs' complaint should be dismissed in its entirety without prejudice. It is **ORDERED** that Plaintiffs are **GRANTED** leave to amend within 30 days of this Report and Recommendation if no objections are filed or within 30 days of the Court ruling on any objections.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.** *Ortiz v. San Antonio Fire Dep't***, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 9, 2023, at Houston, Texas.

_Dena Palermo_
_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**