United States District Court
Southern District of Texas
**ENTERED**
June 04, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

CESAR BUSTOS, *et al.*,     §
    *Plaintiffs*,     §
        §
v.     §      Case No. 4:22-CV-02690
        §
INVIERTE EN TEXAS, LLC, *et al.*,     §
    *Defendants*.     §

## JUDGE PALERMO'S[1] REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTIONS TO DISMISS
## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

This is a purported RICO[2] fraud case.[3] Plaintiffs Cesar Bustos ("Bustos") and

Advance Investment Latam, LLC ("Advance") (collectively "Plaintiffs") allege that

---

[1] Plaintiffs refer to Judge Palermo as "the Magistrate." ECF No. 33 at 2. Likewise, Defendants refer to Judge Palermo's previous report and recommendation as "Palermo Opinion." ECF No. 30 at 1-2. Both sides misidentify Judge Palermo. The title magistrate is obsolete in the United States Courts. More than thirty years ago, Congress adopted the title of United States Magistrate Judge to reflect the role magistrate judges play in relieving the burgeoning caseloads in the United States District Courts and the corresponding burdens on district judges. *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089, 5117. Thus, magistrate judges are judges of the district court and a party—"even when before the magistrate judge—[is] subject to adjudication by an Article III court." *McLeod v. Bryant*, No. 23-1721, 2024 U.S. App. LEXIS 3765, *12 (6th Cir. Feb. 15, 2024). It is an important distinction that counsel failed to recognize. *See United States v. Higby*, 544 F. Supp. 3d 861, 862 n.1 (S.D. Iowa 2015). Because the word magistrate is merely descriptive of the type of judge, addressing a magistrate judge as "magistrate" is the equivalent of improperly addressing a district judge as "district." The proper way to refer to a magistrate judge orally or in writing is "Judge." Counsel are reminded to use the correct title, in the future, when referring to Judge Palermo or any magistrate judge.

[2] Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

[3] The district judge to whom this case is assigned referred the motions addressed herein for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Order, ECF No. 35.

Defendants[4] defrauded and harmed them through an investment scheme. First Am. Compl., ECF No. 29. Pending before the Court are certain Defendants' motions to dismiss, as follows: Comar, ECF No. 30; Miranda, ECF No. 31; and Martinez, RPC, 6 Holdings, and 6 Investments, ECF No. 32. The issue before the Court is whether Plaintiffs' first amended complaint, ECF No. 29, should be dismissed for failing to state a claim, *see* ECF Nos. 30, 31, 32. In their complaint, Plaintiffs advance claims for violation of RICO, common law fraud, fraudulent inducement, violation of the Texas Deceptive Trade Practices Act ("DTPA"), fraudulent transfer, and civil conspiracy.[5] After thoroughly considering Plaintiffs' first amended complaint, the briefing,[6] and the applicable law, the Court recommends that Plaintiffs' first amended complaint be dismissed for failure to state a claim. Furthermore, because this is Plaintiffs' second attempt to state their claims, the Court recommends dismissal with prejudice.

---

[4] The 12 named defendants in this case are: Invierte en Texas, LLC ("Invierte"); Karina Hernandez; Invest and Migrate to USA, LLC ("Invest and Migrate"); Juan Carlos Martinez Cecias Rodriguez ("Martinez"); Cecilia Miranda; Rhinopro Ceramics, LLC ("RPC"); M&D Corporate Solutions, LLC ("M&D"); Comar Holdings, LLC ("Comar"); Mara 6 Holdings, LLC ("6 Holdings"); Mara 6 Investments, LLC ("6 Investments"); Rhino Linings Corporation ("Rhino Linings"); and RhinoPro Truck Outfitters, Inc. ("RPT") (collectively "Defendants"). ECF No. 29 ¶¶ 4-16.

[5] Count six of Plaintiffs' complaint alleges alter ego; however, that is not a cause of action. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) ("Alter ego is not a claim or independent cause of action—it is a remedy to enforce a claimed substantive right.").

[6] The motions to dismiss, other than parts of Miranda's motion, are largely identical. Plaintiffs filed responses to Defendants' motions to dismiss. ECF Nos. 33, 34. Invierte, Invest and Migrate, Hernandez, RPT, M&D, and Rhino Linings have not filed or joined any motion to dismiss.

## I.     FACTUAL BACKGROUND

Bustos is a resident of Mexico and Advance is a Texas limited liability company. ECF No. 29 ¶¶ 2-3. Plaintiffs claim that Defendants marketed fraudulent RhinoPro "franchise" opportunities to foreign nationals, sometimes for the purpose of obtaining visas for permanent residency. *Id*. ¶¶ 21, 33. Plaintiffs further allege that this scheme was carried out over several years, using at least five interrelated companies, marketing to potential investors in Mexico, Taiwan, Vietnam, and other countries, and has victimized dozens of investors. *Id*. ¶¶ 21-22. "The scheme utilized the postal service to submit fraudulent visa applications and used email, telephone, and wire transmissions to communicate with and solicit investors and to transfer money from investors to Defendant companies." *Id*. ¶ 22.

Martinez worked with Hernandez, nonparties Uberwurx, LLC and Mobile Coating Management ("MCM"), and others to "help investors set up bank accounts and incorporate a limited liability company with which to 'run' and 'operate' their RhinoPro business." *Id*. ¶ 28. The scheme required investors to sign two contracts—one with Uberwurx and one with MCM. *Id*. ¶ 29. The Uberwurx contract required the payment of an amount for a license to use RhinoPro products and granted the right to use certain associated trademarks and tradenames. *Id*. ¶ 30. The MCM contract pertained to the day-to-day operations of the business. *Id.* ¶¶ 44-45. Each investor was to receive a RhinoPro Mobile van fully equipped to spray bedliners into

trucks. *Id.* ¶ 32. Rhino Linings manufactured and sold the liquid liner. *Id.*

In January of 2019, Bustos attended a meeting with Hernandez and Martinez in Katy, Texas, alongside another prospective investor, Jorge Crosswell. *Id.* ¶ 37. The purpose of this meeting was to learn more about the RhinoPro investment. *Id.* Bustos was interested in the investment opportunity only, not the visa program. *Id.* ¶ 33. "During this meeting Defendants made numerous representations about the investment, including that it was a franchise and that it would come with a fully equipped truck, accessories store, and inventory." *Id.* ¶ 38. Sometime after that meeting, Martinez, Hernandez, RPC, and RPT, Uberwurx, and MCM convinced Bustos to form Advance for the purpose of investing in a RhinoPro Mobile van and certain licensing rights. *Id.* ¶ 39.

On March 19, 2019, Hernandez emailed Bustos and Crosswell, suggesting that they should sign the RhinoPro contracts soon. *Id.* ¶ 41. In this email, Hernandez "represented that the franchises would provide a return of 11% annually." *Id.* That same day, Bustos and Advance[7] signed a "Management and Administrative Services Agreement" with MCM, a "Refund Deposit Agreement," and an "Uberwurx License Agreement." *Id.* ¶ 42. On April 4, 2019, Bustos wire-transferred $25,000 to Uberwurx. *Id.*; ECF No. 1-1 at 1. On May 7, 2019, pursuant to the agreements,

---

[7] According to the complaint, Bustos formed Advance "on or about April 9, 2019," ECF No. 29 ¶ 42, and thus Advance did not yet exist at this time.

Bustos wire-transferred an additional $152,000. ECF No. 29 ¶ 42.[8]

According to the amended complaint, Martinez did not disclose to investors that MCM and its employees would manage the RhinoPro vans and investors would not be directly involved. ECF No. 29 ¶ 44. Under this arrangement, RhinoPro franchises were rarely profitable as any returns were capped. *Id.* ¶¶ 33, 46. Plaintiffs allegedly "received nothing in return for their investment." *Id.* ¶ 46.

After Plaintiffs filed suit, ECF No. 1, Defendants filed several motions to dismiss the complaint, ECF Nos. 7, 8, 9, 17, 19.[9] The Court recommended granting those motions, finding that Plaintiffs failed to state a claim for relief. Report & Recommendation ("R&R"), ECF No. 27. Along with dismissing Plaintiffs' claims without prejudice, the Court allowed Plaintiffs leave to amend "within 30 days of this Report and Recommendation if no objections are filed or within 30 days of the Court ruling on any objections." *Id.* at 26. No objections were filed, and the district judge adopted the R&R, dismissing the complaint. Order, ECF No. 28. Thirty days

---

[8] Although the amended complaint has no attachments, Plaintiffs reference nonexistent exhibits for the wire payments. ECF No. 29 ¶ 42 nn.7-8. The Court presumes Plaintiffs intended to refer to the same exhibits that were attached to and cited in the corresponding paragraph in the original complaint. *See* ECF No. 1 ¶ 35; ECF Nos. 1-1, 1-2. The exhibit attached to the original complaint does not show to whom Bustos transferred the $152,000. *See* ECF No. 1-2 at 1.

[9] Hernandez, Invierte, Invest and Migrate, M&D, and RPT have not yet made an appearance in this case. See ECF No. 29 ¶¶ 4-5, 7, 9, 13. Plaintiffs filed proof of service as to each for the original complaint. ECF Nos. 6, 10-5, 12. However, the Court has since dismissed Plaintiffs' original complaint without prejudice, see Order, ECF No. 28, and it is unclear whether Plaintiffs have served the amended complaint on the non-appearing parties.

after the R&R was entered, Plaintiffs filed their amended complaint. ECF No. 29.[10]

In the amended complaint, Plaintiffs assert claims for RICO violations against all Defendants; claims for fraud and fraudulent inducement, and violations of the DTPA against Martinez, Hernandez, RPC, and RPT; a claim for fraudulent transfer against Martinez; and civil conspiracy against Martinez, RPC, RPT, and Rhino Linings. *Id*. ¶¶ 48-72. Plaintiffs allege that both Martinez and Hernandez are under indictment for their actions in this scheme. *Id*. ¶ 1.[11]

## II.   THE STANDARD FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[10] Defendants argue that Plaintiffs' amended complaint is untimely. ECF Nos. 30 at 2; 31 at 2; 32 at 2. As evidenced above, the record shows that the amended complaint is timely—therefore, this argument is without merit.

[11] *See* ECF No. 29 ¶ 1 n.1 (citing *United States of America v. Juan Carlos Martinez Cecias Rodriguez and Karina Hernandez*, No. SA-21-CR-533-FB, pending in the United States District Court for the Western District of Texas—San Antonio Division; *United States of America v. Juan Enrique Kramer, Adrianna Pastor, Noel Olguin, and Karina Hernandez*, No. SA-21-CR-154-FB, pending in the Western District of Texas—San Antonio Division).

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id*. Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted).

The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "strain to find inferences favorable to the plaintiffs." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021) (quotation omitted). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *See Sparks v. Tex. Dep't of Transp.*, 144 F. Supp. 3d 902, 903 (S.D. Tex. 2015). "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *3 (5th Cir. Oct. 12, 2023) (quotation omitted). The court should not evaluate the merits of the allegations but must satisfy itself only

that the plaintiff has adequately pleaded a legally cognizable claim. *Bright v. City of Killeen*, 532 F. Supp. 3d 389, 396 (W.D. Tex. 2021) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

When alleging fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s particularity requirement has long played a screening function, standing as a "gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1116 (S.D. Tex. 2020) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)). At the very least, "Rule 9(b) requires the who, what, when, where, and how of the alleged fraud to be laid out." *Kreway v. Countrywide Bank, FSB*, 647 Fed. App'x 437 (5th Cir. 2016) (cleaned up). Courts must "apply Rule 9(b) to fraud complaints with 'bite' and 'without apology.'" *Grubbs*, 565 F.3d at 185 (quotation omitted).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF.

Defendants' motions to dismiss ask the Court to dismiss Plaintiffs' RICO and state law claims. The Court previously recommended granting the first round of motions to dismiss under federal pleading standards. Plaintiffs' amended complaint contains only minor changes from the original complaint, and the briefing is mostly recycled from the prior motions. Not all Defendants have sought dismissal, nor has

every Defendant made an appearance in this case. Regardless, because the allegations against all Defendants are identical—Plaintiffs only allege specific fraudulent acts and representations by Hernandez and Martinez, while insisting the other entities are their "alter egos," ECF No. 29 ¶ 70—the Court therefore considers the sufficiency of Plaintiffs' amended complaint as to *all* named Defendants. *See D&T Partners ex rel. ACET Glob. LLC v. Baymark Partners LP*, No. 3:21-CV-1171-B, 2022 WL 1458554, at *4 (N.D. Tex. May 9, 2022) ("Equitable reasons support allowing the arguments applicable to one defendant to apply to all similarly situated defendants." (citing *Foxx v. My Vintage Baby, Inc.*, 624 F. App'x 318, 319 (5th Cir. 2015))); *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("Where a defending party establishes that plaintiff has no cause of action, this defense generally inures also to the benefit of a defaulting defendant." (cleaned up)). The Court evaluates each of Plaintiffs' claims below.

## A.   Plaintiffs' Amended Complaint Fails to Cure Several Rule 9(b) Pleading Deficiencies.

When the Court recommended granting Defendants' first round of motions to dismiss, Plaintiffs' failure to plead fraud with particularity was a common thread. R&R, ECF No. 27 at 10-12; *see also* FED. R. CIV. P. 9(b); *Paul v. Aviva Life & Annuity Co.*, No. 3:09-CV-1490-B, 2011 WL 2713649, at *5 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing RICO claim in part for failure to allege that representations were false when made). In particular, the Court

found that Plaintiffs failed to explain how or why any alleged representation was fraudulent when made. R&R, ECF No. 27 at 10-12, 18, 21. Plaintiffs' amended complaint is nearly identical to the original complaint, with a few minor changes. *Compare* ECF No. 1, *with* ECF No. 29. Defendants move to dismiss on the basis that Plaintiffs have failed to cure the existing deficiencies. ECF Nos. 30 at 1; 31 at 1-2; 32 at 1-2. In all other respects, Defendants' briefing is largely unchanged. *Compare* ECF Nos. 30, 31, 32, *with* ECF Nos. 7, 8, 9, 17, 19. Plaintiffs' responses are likewise almost identical. *Compare* ECF Nos. 33, 34, *with* ECF Nos. 14, 15, 16, 21, 22. The Court finds itself in the same situation as before, and the parties' recycled arguments are unhelpful.

Pursuant to the Court's previous report and recommendation, R&R, ECF No. 27, which Judge Ellison adopted, Order, ECF No. 28, it is now the law of the case that Plaintiffs' pleadings are deficient under Rule 9(b), unless the few changes to the amended complaint somehow alter that conclusion. Rather than engage in an identical analysis of each claim, the Court focuses on the primary deficiency noted in the prior report and recommendation, *i.e.*, Plaintiffs' failure to explain how or why any alleged representation was fraudulent when made. R&R, ECF No. 27 at 10-12, 18, 21; *see also Arruda v. Curves Int'l, Inc.*, No. 6:20-CV-00092-ADA, 2020 WL 4289380, at *3 (W.D. Tex. July 27, 2020), *aff'd*, 861 Fed. Appx. 831 (5th Cir. 2021) ("RICO claims based on allegations of fraud, such as wire or mail fraud, are subject

to the heightened pleading burden imposed by Rule 9(b).”). Indeed, that flaw was fatal not just to RICO but to nearly every claim.[12] *See* R&R, ECF No. 27. If Plaintiffs' amended complaint has not adequately remedied that flaw, then the Court's conclusion on Rule 9(b) must also remain unchanged.

### 1. *Plaintiffs' amended complaint contains few new allegations.*

In addition to minor corrections and stylistic changes, Plaintiffs insert several new paragraphs directly in response to the Court's rulings:

C. Uberwurx was a RICO enterprise.

34. Uberwurx is/was a Texas limited liability company. Uberwurx is/was in the business of manufacturing "precision formulated auto detailing supplies for discriminating car owners, collectors and enthusiasts." Uberwurx is an 'enterprise' as that term is defined in 18 U.S.C. § 1961(4). Non-defendant MCM and Defendants Juan Carlos Martinez, Karina Hernandez, Cecilia Miranda, RPC Outfitters, RhinoPro Ceramic, Rhino Linings, M&D Corporate Solutions, Invest and Migrate to USA, and Invierte en Texas, are all "persons" within the meaning of 18 U.S.C. § 1961(3). Uberwurx and the Defendants engaged in a pattern of racketeering activity by selling fraudulent investment opportunities to foreign investors, as more fully discussed herein.

D. Defendants were an association-in-fact enterprise with a separate existence from its racketeering activity.

35. On information and belief some of the Defendants, including Martinez, RPC Outfitters, Rhino Linings, and non-Defendants Uberwurx and MCM sold legitimate RhinoPro Mobile franchises with the purpose of selling and installing truck bed linings. This conclusion is supported by in part the fact that Rhino Linings Corporation applied for and obtained a federal trademark registration for RhinoPro Mobile.

---

[12] Only Plaintiffs' claim for fraudulent transfer was not dismissed for this reason, and Plaintiffs' derivative conspiracy claim was dismissed for failure to plead any other viable claim for relief.

However, as the market is limited as to how many such franchises it can sustain, particularly in a limited geographic market, the Defendants began selling fraudulent "franchises" as well. They have been selling fraudulent franchises since at least 2015. New participants, such as Hernandez and Invierte en Texas joined to help carry out the enterprise.

36. Defendants are therefore a group of individuals associated together for the common purpose of marketing fraudulent "franchise" opportunities to foreign nationals who want to invest in the United States, usually for the purpose of obtain a visa. They constitute an "association-in-fact enterprise," as that term is defined by 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce. These defendants acted for the common purpose of obtaining "monetary payments" from Plaintiffs and others by selling fraudulent RhinoPro Mobile franchise and submitting or facilitating the submission of fraudulent visa applications.

E. Execution of the Scam as to Plaintiff Cesar Bustos

37. Defendants Karina Hernandez and Juan Carlos Martinez pitched the RhinoPro investment to Plaintiff Bustos. Plaintiff attended a meeting with Defendants Karina Hernandez and Juan Carlos Martinez in Katy Texas in January 2019. He attended the meeting with Jorge Crosswell, another victim. A picture of Bustos, Crosswell, Martinez, and Hernandez was even taken outside of the RhinoPro facility in Katy, Texas. The purpose of the meeting was to check out the RhinoPro Mobile investment.

38. During this meeting Defendants made numerous representations about the investment, including that it was a franchise and that it would come with a fully equipped truck, accessories store, and inventory. Defendants knew these statements were false because (a) their own contracts were for a license and not a franchise and (b) the promised fully outfitted trucks, accessories store, and inventory did not exist.

ECF No. 29 ¶¶ 34-38 (footnote omitted). Plaintiffs then clarify that some of their previous allegations—including that the management contract limited the maximum rate of return—pertained not to them, but to nonparty Crosswell. *Id.* ¶¶ 39-41.

Plaintiffs do not expand on Hernandez's email from March 19, 2019, except to note that "[s]he sent the same email to Jorge Crosswell." *Id.* ¶ 41. Plaintiffs then allege:

> Hernandez knew that the representations made about the RhinoPro Mobile "franchises" were false because (a) Bustos would be unable to manage the franchise, a requirement to obtain a visa (see below), (b) she and Martinez represented the product as a franchise when she knew from the agreement that it was in fact a license agreement, (c) she knew the promised vehicles, store, and inventory did not exist and (d) she knew that prior investors had not received the promised franchises and lost their money.

*Id.* ¶ 45. Plaintiffs insert similar allegations regarding falsity and knowledge after each fraud claim. *See id.* ¶¶ 55-56, 61-62. Plaintiffs further allege that "to be eligible for a visa, the franchise owner had to be involved in the day-to-day business operations," but "Defendants model relegated day-to-day operations to employees hired by MCM, with the investor having no role." *Id.* ¶ 44. Although the investment was "[o]ften" pitched as providing a "path to citizenship through naturalization," that was "not always" the case. *Id.* ¶ 51.

## 2. *Plaintiffs fail to explain how any representations pertaining to the alleged 11% rate of return are fraudulent.*

The Court previously focused on Hernandez's alleged representation in the email from March 19, 2019, regarding an 11% rate of return for the investment. R&R, ECF No. 27 at 10-12. Plaintiffs originally alleged that Hernandez "represented that the franchises would provide a return of 11% annually" in an e-mail, which was "belied by the management contract" limiting Plaintiffs to "an annual return of

$36,750 on a $525,000 investment." ECF No. 1 ¶ 34. Plaintiffs thus alleged those

"representations about the investment opportunity and its returns were false," based

on purported limits contained in the contract. *Id.* ¶ 31. Plaintiffs never supplied a

copy of the email or the contract or any relevant provisions. Moreover, Plaintiffs

alleged that they only invested a total of $177,000. *Id.* ¶ 35. The Court thus found

the original complaint lacking as to "why the statement was fraudulent when made."

R&R, ECF No. 27 at 10 (citing *Paul*, 2011 WL 2713649, at *5).

> The inference Plaintiffs attempt to draw is that Ms. Hernandez's
> representation was false when made because Plaintiffs could not have
> earned the promised 11% on their investment. This would be true if
> Plaintiffs invested $525,000, but, as alleged, Plaintiffs only invested
> $175,000 and they fail to allege how much they have received in return.
> ECF No. 1 ¶ 32. Instead, Plaintiffs allege that they "are far from the
> promised 11% in returns and [Defendants] have sourced their funding
> through new investment fees rather than the income of the established
> business." ECF No. 1 ¶ 37. This does not show that Ms. Hernandez's
> representation was fraudulent when made.

*Id.* at 10-11. The Court therefore found Plaintiffs' allegations pertaining to the 11%

rate of return insufficient under Rule 9(b) for failure to allege the representations

were fraudulent when made and with knowledge of falsity. *Id.* at 11-12.

In the amended complaint, rather than expand upon those representations,

Plaintiffs concede that the alleged contractual limits appear not in Plaintiffs' contract

but in non-party Crosswell's. ECF No. 29 ¶ 41. Plaintiffs allege no comparable

restrictions in their contracts.[13] Plaintiffs nonetheless add new allegations that Hernandez "knew that prior investors had not received the promised franchises and lost their money," *id.* ¶¶ 43, 56, and that Plaintiffs "received nothing in return for their investment," *id.* ¶¶ 46, 57. But those meager additions fail to cure the existing deficiencies.[14] As the Court previously observed: "A failure to perform, in and of itself, is not fraud." ECF No. 27 at 11; *accord Cavazos Ramirez v. Laredo Nat'l Bank*, No. CV M-10-09, 2013 WL 12394256, at *13 (S.D. Tex. Sept. 30, 2013) ("A mere breach of contract, even breach of an unenforceable contract, is not fraud."). Even if Plaintiffs had alleged limits on the returns under their contracts, Hernandez is not a party to the contracts, and Plaintiffs do not allege that Hernandez had any special knowledge of those provisions. *See* ECF No. 29 ¶¶ 41, 43.

Furthermore, even if Plaintiffs received no return on their investment, as alleged, the amended complaint must adequately "explain why the statement was fraudulent when made." *Gilbert v. Driven Brands Shared Services, LLC*, No. 4:23-CV-01747, 2023 WL 9316919, at *7 (S.D. Tex. Dec. 11, 2023), *adopted*, 2024 WL

---

[13] Crosswell filed a separate lawsuit mirroring the instant case, which has since been dismissed for failure to state a claim. *See Crosswell v. Rodriguez*, No. 4:22-CV-01105, 2023 WL 6206911, at *1 (S.D. Tex. Sept. 8, 2023), *adopted as modified sub nom. Crosswell v. Martinez*, No. 4:22-CV-01105, 2023 WL 6207754 (S.D. Tex. Sept. 25, 2023).

[14] These conclusory statements are also unsupported by any factual allegations. Plaintiffs identify no prior investors, and they concede Defendants also "sold legitimate RhinoPro Mobile franchises" and even "obtained a federal trademark registration." ECF No. 29 ¶ 35. Not every failed business venture or bankruptcy filing commands an inference of fraud. *See, e.g.*, *In re Abraham*, No. ADV 10-03227, 2014 WL 3406513, at *9 (S.D. Tex. July 7, 2014) ("That the business ventures . . . failed, and the business subsequently failed, does not constitute fraud.").

407497 (S.D. Tex. Feb. 2, 2024) (quotation omitted); *accord Dawson v. Bank of Am., N.A.*, 605 Fed. App'x 263, 266 (5th Cir. 2015). This is because "a statement true when made does not become fraudulent because things unexpectedly go wrong." *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 910 (E.D. La. 2014) (quoting *Pommer v. Medtest Corp.*, 961 F.2d 620, 623 (7th Cir. 1992)). The Court specifically noted this deficiency in its previous findings. *See* R&R, ECF No. 27 at 10-11. Yet, Plaintiffs fail to explain how or why the alleged statements regarding the 11% rate of return were fraudulent *at the time they were made*. Some knowledge that prior investors had lost money does not automatically render future predictions of profitability false.[15] Plaintiffs do not identify these "prior investors" or allege how much they lost. ECF No. 29 ¶ 21-22, 43. Instead, Plaintiffs allege, without factual support, that the investments "were rarely, if ever, profitable." *Id.* ¶ 46. Such conclusory allegations are not afforded the

---

[15] Indeed, Plaintiffs' fraud claims based on representations of *future* performance, such as rates of return, fail as a matter of law. *See Hoffman v. L & M Arts*, 838 F.3d 568, 579 (5th Cir. 2016) ("Because a prediction, or statement about the future, is essentially an expression of opinion, future predictions are generally not actionable." (cleaned up)). Representations of future events are only actionable in certain "rare cases," *id.*, but those circumstances are not alleged here. A contractual promise may also be actionable in fraud under a theory of fraudulent inducement "if the promise was made with no intention of performing at the time it was made." *W. African Ventures Ltd. v. Fleming*, 634 F. Supp. 3d 391, 401 (S.D. Tex. 2022) (quoting *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). While Plaintiffs allege that Hernandez knew prior investors lost money, ECF No. 29 ¶ 43, Plaintiffs never state that Hernandez knew Uberwurx and MCM had no intention of performing at the time of contracting. Plaintiffs also allege no facts suggesting any duty to disclose owed in this arms-length commercial investment. *W. African Ventures Ltd.*, 634 F. Supp. 3d at 402 (discussing nondisclosure fraud). Thus, Plaintiffs' allegations fall short under any theory of fraud. But even assuming these claims are *actionable* in fraud, Plaintiffs have not satisfied Rule 9(b) to plead fraud with particularity.

assumption of truth. *Iqbal*, 556 U.S. at 678-79. Thus, while Plaintiffs have satisfied the who, what, where, and when of Rule 9(b), *see Kreway*, 647 Fed. App'x at 437, Plaintiffs still fail to allege "how" or "why" those representations were fraudulent.[16]

### 3. *Plaintiffs fail to identify any fraud pertaining to the licenses.*

Plaintiffs' new theory of fraud shoehorned into the amended complaint is that, despite the investment opportunity allegedly being marketed as a *franchise*, "the 'franchise' was a license." ECF No. 29 ¶ 27. Hernandez thus allegedly committed fraud when "she and Martinez represented the product as a franchise when she knew from the agreement that it was in fact a license agreement."[17] *Id.* ¶ 43. However,

---

[16] Moreover, Plaintiffs appear to abandon the 11% rate of return theory in response to the renewed motions to dismiss, at least as it pertains to RICO predicate acts of wire and mail fraud. *See Talarico v. Johnson*, No. 4:21-CV-3689, 2023 WL 2618255, at *14-15 (S.D. Tex. Feb. 7, 2023) (noting that a claim is abandoned when the party fails to pursue it or "defend it in a dispositive motion" (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006))). Indeed, Plaintiffs respond to the renewed motions to dismiss by arguing that "Hernandez sent them an email containing fraudulent representations about the nature of the investment and its rate of return. Those Misrepresentations [*sic*] were that Plaintiffs could invest in 'franchises.'" ECF No. 33 at 4. Plaintiffs frame the entire dispute as being that "Plaintiffs were sold on their investments being 'franchises' while they actually nature [*sic*] of their 'franchise agreements' operated as 'licenses' by contract, a material misrepresentation." *Id.* at 2. Although Plaintiffs still reference in passing alleged misrepresentations "regarding the nature *and return* of the investment opportunity," *id.* at 6 (emphasis added), the responses never squarely address that theory of fraud. The new paragraphs added to explain why Hernandez's representations were false also omit any reference to the 11% rate of return. *See* ECF No. 29 ¶¶ 38, 43, 55-56, 61-62. Regardless, even if Plaintiffs have not abandoned this theory, the amended complaint fails to cure this pleading deficiency.

[17] Notably, Plaintiffs allege no fraudulent misrepresentations—or any actions whatsoever—by any Defendants other than Hernandez and Martinez. ECF No. 29 ¶¶ 37-43. The Court previously concluded that Plaintiffs' failure to plead fraud with particularity against *each* Defendant required dismissal of those claims against those Defendants. ECF No. 27 at 25; *see also Pettieway v. Strent*, No. 2:23-CV-00009, 2023 WL 2617038, at *2 (W.D. La. Mar. 23, 2023) (noting that Rule 8 requires fact allegations sufficient "to establish what EACH defendant did that allegedly caused harm"). Instead, Plaintiffs assume guilt by association, as many of the various entities named as Defendants are somehow linked to Martinez. *See* ECF No. 29 ¶¶ 21-36.

Plaintiffs' vague allegation that "Defendants made numerous representations about the investment, *including that it was a franchise*," *id.* ¶ 38 (emphasis added), does not come close to the particularity required under Rule 9(b).[18] Plaintiffs again fail to identify any *specific* representation pertaining to this new "franchise" theory, which is fatal under Rule 9(b). *See, e.g.*, *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *6 (S.D. Tex. Oct. 7, 2019) (dismissing fraud claims where plaintiffs failed to "recount specific statements that were false representations").

In response, Defendants insist that the investments "were not meant to [*sic*] nor were they ever franchises." ECF No. 30 at 3. Indeed, Plaintiffs identify nothing inherently fraudulent about the investment. Plaintiffs allege that franchises must include a "Franchise Disclosure Statement," whereas Defendants "used a general licensing structure to circumvent federal franchising requirements." ECF No. 29 ¶ 31. Yet Plaintiffs allege that on March 19, 2019, they "signed . . . the Uberwurx License Agreement," *id.* ¶ 42, not a "franchise" agreement. Defendants apparently did not prepare false franchise disclosures, and the agreement was plainly labeled a "License Agreement." Despite repeatedly alleging Defendants marketed "fraudulent

---

[18] As it pertains to the email sent on March 19, 2019, Plaintiffs allege that Hernandez "represented that the *franchises* would provide a return of 11% annually," and urged Bustos to "not lose out on the opportunity to invest as part of the group of investors in the RhinoPro *franchises*." ECF No. 29 ¶ 41 (emphasis added). But Plaintiffs do not allege that Hernandez affirmatively represented in the email that Plaintiffs' investment was for a franchise. Instead, the email allegedly references a "group of investors," some of whom were investing in franchises. *Id.* Plaintiffs do not quote or attach a copy of that email. Although the Court accepts all well-pleaded allegations as true, Plaintiffs fail to plead *any* representations with the requisite specificity. *See* FED. R. CIV. P. 9(b).

'franchise' opportunities" or "phantom franchises," *id.* ¶¶ 1, 72, Plaintiffs concede that Defendants have sold many legitimate franchises as well, *id.* ¶ 35. Aside from the fact that *this* investment was plainly for a license and not a franchise,[19] Plaintiffs fail to identify any actual statements or explain how those representations were false. Thus, Plaintiffs' new theory still does not satisfy federal pleading standards.[20]

### 4.   *Plaintiffs allege two other categories of misrepresentations, but they fail to identify any specific statements or explain how those alleged representations were fraudulent.*

Plaintiffs identify two other potentially fraudulent misrepresentations in the amended complaint: (1) that Plaintiffs could "manage the franchise," and (2) that they would receive "vehicles, store, and inventory." ECF No. 29 ¶ 55. However, Plaintiffs again do not identify any *specific* representations. Plaintiffs only vaguely

---

[19] Plaintiffs do not assert that their contractual relationships qualify as a franchise under any legal definition. Plaintiffs also do not attach any of the alleged contracts or assert any claims against the signatories. Uberwurx and MCM are conspicuously absent from Plaintiffs' complaint.

[20] Plaintiffs' theory of fraud is equally dubious. If Defendants knew from the agreement's language that it was a "license" and not a "franchise," then how were Plaintiffs unable to reach the same conclusion when they received, reviewed, and signed those same agreements? ECF No. 29 ¶ 42. Further, if Plaintiffs never received the required franchise disclosures, *id.* ¶ 31, then they should have been on notice that what they were investing in was intended to be a license, not a franchise. Failure to exercise due diligence before investing does not mean Defendants committed fraud. *See In re Primera Energy, LLC*, 579 B.R. 75, 142 (Bankr. W.D. Tex. 2017), *aff'd sub nom. Alfaro v. Reiley*, No. 5:18-CV-0329-JKP, 2019 WL 4765385 (W.D. Tex. Sept. 27, 2019) (noting Texas law requires justifiable reliance for fraud claims, meaning "a party must have exercised ordinary care and reasonable due diligence for his own interests," and "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law"); *cf. Cont'l Mach. Co., Inc. v. Korn*, No. 3:19-CV-769-L, 2020 WL 521092, at *5 (N.D. Tex. Jan. 16, 2020), *adopted*, 2020 WL 511813 (N.D. Tex. Jan. 31, 2020) ("Contracting parties are obligated to protect themselves by reading what they sign and are presumed, as a matter of law, to know the contract's terms." (quotation omitted)).

allege that Martinez and Hernandez represented at the meeting in January of 2019 that the investment "would come with a fully equipped truck, accessories store, and inventory." *Id.* ¶ 38. This representation was apparently not repeated in the email on March 19, 2019. Plaintiffs do not allege whether this promise was also included in any contract.[21] Absent the requisite specificity,[22] Plaintiffs cannot satisfy Rule 9(b). *See Kreway*, 647 Fed. App'x at 437; *Ardoin*, 2019 WL 4933600, at *6.

Nor does the amended complaint contain any allegation that Defendants ever represented to Plaintiffs that they could "manage the franchise." To the contrary, Defendants allegedly "did not disclose" to Plaintiffs that investors "would be unable to manage their businesses themselves." *Id.* ¶ 44. Instead, Defendants truthfully "represented that MCM would perform management services," *id.* ¶ 54, and that MCM would oversee operations for "each investor's van," *id.* ¶ 44. Plaintiffs signed a separate "MCM Management and Administrative Services Agreement," *id.* ¶ 42, ostensibly containing contractual provisions to that effect. But Plaintiffs fail to allege

---

[21] Assuming the written contracts contained an integration clause, Plaintiffs' fraud claims based on alleged oral representations are likely barred for other reasons as well. *See Stewart Title Guar. Co. v. Stewart Title Latin Am., Inc.*, No. 4:12-CV-03269, 2017 WL 1078759, at *9 (S.D. Tex. Mar. 21, 2017) (barring claims based on oral promise where license agreement "contains an integration clause that clearly states it supersedes all prior agreements between the parties, oral or written").

[22] Particularity is necessary for fraud because context matters. *See Grubbs*, 565 F.3d at 188-89 (5th Cir. 2009) ("[P]leading common law fraud with particularity demands the specifics of the false representation—without the precise contents of the misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment."). For example, if the representation was that investors who pledge *over $1 million* will receive their own truck, then Plaintiffs could not have justifiably relied on that statement when they only invested $175,000.

Defendants made any *affirmative* misrepresentations in this respect. Under Texas law, fraud by nondisclosure is only cognizable if "a duty to disclose" exists. *United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005). Plaintiffs allege no facts that would support imposing such a duty in this arms-length commercial transaction. *Cf. Pierce v. Aircraft Fin. Corp. LLC*, 512 F. Supp. 3d 753, 767 (S.D. Tex. 2021) (identifying four scenarios under Texas law where a duty to disclose arises). These allegations thus fail to satisfy Rule 9(b).

In the end, the handful of paragraphs added to the amended complaint fail to cure the previously identified pleading deficiencies under Rule 9(b).[23] Plaintiffs' amended complaint fails to identify any statements with specificity or explain why those representations were fraudulent when made. The Court's recommendation thus remains unchanged, and Plaintiffs' fraud-based claims should be dismissed. This includes Plaintiffs' RICO, DTPA, common law fraud, and fraudulent inducement claims, ECF No. 29 ¶¶ 48-63, which the Court previously recommended dismissing for failure to plead fraud with particularity, ECF No. 27 at 10-12, 16-18, 20-21.[24] Although failing to satisfy federal pleading standards alone is sufficient to warrant

---

[23] At most, Plaintiffs' addition of a paragraph identifying Uberwurx as the alleged RICO enterprise does address one of the Court's previous grounds for recommending dismissal. ECF No. 27 at 12-14. Even then, the new paragraphs on RICO enterprise and association-in-fact are conclusory and contain no new factual allegations. ECF No. 29 ¶¶ 33-35.

[24] In contrast, Plaintiffs' fraudulent transfer claim was previously evaluated under both Rule 9(b) *and* Rule 8(a) pleading standards. *Id.* at 21-23. The Court therefore addresses Plaintiffs' fraudulent transfer claims separately.

dismissal, the Court proceeds to address other obvious deficiencies in the amended complaint, which in the aggregate counsel in favor of dismissal with prejudice.

### B.    Plaintiffs Fail to State a RICO Claim.

Defendants argue that Plaintiffs fail to state a claim under RICO. Relevant here is the argument that Plaintiffs never pleaded the necessary predicate acts and pattern of racketeering activity.[25] ECF Nos. 30 at 13-14; 31 at 13-15; 32 at 13-14. The Court previously agreed with Defendants that the RICO claims failed under Rule 9(b) as Plaintiffs did not plead with particularity how any representations were false. R&R, ECF No. 27 at 9-12. Because the Court had no need to proceed beyond federal pleading standards, the Court ended its analysis there. However, even if Plaintiffs' recycled allegations suffice for the purposes of Rule 9(b), Plaintiffs still have not pleaded the necessary predicate acts to show a pattern of racketeering.

---

[25] Because the briefing is largely identical to the first round of motions to dismiss, Defendants renew their arguments that Plaintiffs failed to plead: (1) reliance in connection with mail and wire fraud; (2) conspiracy under § 1962(d); or (3) a cognizable RICO enterprise. ECF No. 30 at 10-12, 14-15. The Court previously noted that reliance is not an element for mail or wire fraud, R&R, ECF No. 27 at 8 n.8, and the renewed motions still do not address this discrepancy. The Court also found that Plaintiffs' complaint contained no § 1962(d) RICO conspiracy claim. *Id.* at 8 n.9. The relevant paragraphs remain largely unchanged in the amended complaint, ECF No. 29 ¶¶ 49-52, as does the Court's conclusion. As for the failure to allege a cognizable RICO enterprise, that is arguably Plaintiffs' primary new addition to the amended complaint. *Id.* ¶¶ 34-36 (alleging that Uberwurx was a RICO enterprise and association-in-fact enterprise in the alternative). Defendants do not address or acknowledge these new paragraphs in their renewed briefing. The Court therefore assumes for the purposes of these motions that Plaintiffs have sufficiently alleged a cognizable RICO enterprise, although Plaintiffs' conclusory allegations remain unsupported by facts.

### 1.    *RICO prohibits a pattern of racketeering activity.*

"Congress enacted RICO in order to prohibit conduct involving a pattern of racketeering activity." *Alvarez v. Rosas*, No. H-18-4646, 2020 WL 2061491, at *4 (S.D. Tex. April 29, 2020) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006); *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the RICO's substantive restrictions." *Id*. (quoting *Anza*, 547 U.S. at 453 (quoting 18 U.S.C. § 1964(c))).

To state a civil RICO claim under 18 U.S.C. § 1962, a plaintiff must allege three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 201 (5th Cir. 2015) (quotation omitted).[26] An act of "racketeering activity," commonly referred to as a "predicate act," is defined to include certain criminal acts, including mail and wire fraud, and any act indictable under the Immigration and

---

[26] The amended complaint does not specify which subsection of § 1962 Plaintiffs rely on. *See* ECF No. 29 ¶ 49. Plaintiffs' responses, however, specifically cite subsection (c). *See* ECF Nos. 33 at 7; 34 at 8. The Court therefore assumes that Plaintiffs' RICO claims arise under § 1962(c), which "prohibits any person employed by or associated with any enterprise from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity." *N. Cypress*, 781 F.3d at 202 (cleaned up). Regardless of the precise subsection, the element requiring a "pattern of racketeering activity" is common to all three. *Id.* at 201.

Nationality Act. *See* 18 U.S.C § 1961 (defining "racketeering activity"); *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (referring to racketeering activity as a "predicate act").

To rise to the level of "racketeering activity" there must be two or more predicate acts that are: (1) related; and (2) amount to or pose a threat of continued criminal activity. *Alvarez*, 2020 WL 2061491, at *4 (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)); *accord Word of Faith*, 90 F.3d at 122. The "continuity" element is intended to "prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quotation omitted). Continuity can be demonstrated in two ways: "(1) a closed period of repeated conduct, or (2) an open-ended period of conduct that by its nature projects into the future with a threat of repetition." *Id.* (cleaned up). Where the defendant has "terminated any allegedly fraudulent scheme" before suit is filed, open-ended continuity is unavailable. *Id.* at 233 (quoting *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008)). The continuity inquiry is simplified "in cases where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, for in such cases, a 'pattern of racketeering activity' has not been shown." *Abraham*, 480 F.3d at 355 (cleaned up).

### 2.    *Plaintiffs do not allege a pattern of racketeering activity.*

Defendants argue that Plaintiffs have failed to sufficiently plead racketeering activity because the amended complaint does not plead two or more predicate acts. ECF Nos. 30 at 8-9; 31 at 7-9; 32 at 8-9. Defendants also contend that no "pattern of racketeering activity" has been adequately alleged. ECF Nos. 30 at 13-14; 31 at 13-15; 32 at 13-14. Plaintiffs argue that they have adequately pleaded acts of mail and wire fraud to satisfy their burden. ECF Nos. 33 at 4; 34 at 5. Plaintiffs insist that they have adequately pleaded an open-ended period by showing that Defendants' conduct would "continue indefinitely into the future if not stopped." ECF Nos. 33 at 12; 34 at 12. Plaintiffs raise no arguments under the closed-period theory.

Even assuming Plaintiffs' allegations satisfy Rule 9(b) and establish at least two predicate acts of mail or wire fraud,[27] Plaintiffs have failed to identify a pattern of racketeering activity. This is because all alleged instances of mail and wire fraud

---

[27] "The elements of wire fraud, as set out in 18 U.S.C. § 1343, are: (1) a scheme to defraud, (2) the use of wire communications, and (3) a specific intent to defraud." *United States v. Deason*, No. 14–10461, 2015 WL 4709584, at *2 (5th Cir. 2015). The elements of mail fraud under 18 U.S.C. § 1341 are the same but with use of the mails. *See United States v. Swenson*, 25 F.4th 309, 316 (5th Cir. 2022). The pleadings do not identify what predicate acts Plaintiffs' RICO claim relies on, despite already having a chance to amend. Even so, Plaintiffs allege that Hernandez engaged in *mail* fraud when she represented that Plaintiffs could invest in "franchises" with "a return of 11%" in an email sent March 19, 2019. ECF Nos. 29 ¶ 41; 33 at 4; 34 at 5. Plaintiffs further appear to allege *wire* fraud when they were persuaded to wire-transfer funds to Defendants, consisting of payments of $25,000 and $152,000 on April 4 and May 7, 2019. ECF Nos. 29 at ¶ 42; 33 at 4. The pleadings identify no other predicate acts pertaining to Plaintiffs or any other prospective investor.

occurred as part of a single transaction,[28] *i.e.*, Plaintiffs' investment in the RhinoPro license. In the Fifth Circuit, no "pattern" can be established where the "alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction." *Word of Faith*, 90 F.3d at 123 (5th Cir. 1996). In *Word of Faith*, this was "the production of television news reports," which allegedly included false statements about the church. *Id.*; *see also In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) (defense of a lawsuit); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) (corporate merger). Other than the alleged fraudulent misrepresentations, Plaintiffs have cited no authority indicating that license agreements are inherently illegal.[29] Because all alleged predicate acts—one email and two subsequent wire transfers— were part of a single, otherwise lawful commercial transaction, Plaintiffs have not sufficiently pleaded a pattern of racketeering activity.

---

[28] Plaintiffs' attempt to break up this single transaction into several predicate acts is unconvincing. *See D&T Partners*, 2022 WL 13829913, at *7 ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997))). "Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months," but it is "unlikely that Congress intended RICO to apply in the absence of a more significant societal threat." *Id.* (quoting *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1268 (7th Cir. 1990)).

[29] This is not to imply that *all* activities Defendants allegedly engaged in were lawful. *See* ECF No. 29 ¶ 1 & n.1 (noting Martinez's and Hernandez's criminal indictments). Plaintiffs allege a vast scheme of immigration fraud, including "fraudulent visa applications." *Id.* ¶ 21-22. But Plaintiffs allege no predicate acts in that respect. Indeed, the amended complaint contains no allegations that Defendants ever mentioned or suggested immigration to Bustos, who states he "was not interested in obtaining a visa, he was interested in the investment opportunity." *Id.* ¶ 33.

### 3.       *Plaintiffs do not sufficiently allege any theory of continuity.*

Separately, Plaintiffs have failed to allege any future threat of criminal activity for open-ended continuity. "This may be shown where there exists a 'specific threat of repetition extending indefinitely into the future,' or 'where it is shown that the predicates are a regular way of conducting [an] ongoing legitimate business.'" *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242-43 (1989)). Courts have therefore found that events such as bankruptcy or arrest cut off any threat of future repetition. *See, e.g.*, *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2016 WL 302313, at *10 (N.D. Tex. Jan. 25, 2016) (finding no threat of continuity where plaintiffs alleged no predicate act "that occurred after August 2012, when [the defendant] filed for bankruptcy"); *Sunland Constr., LLC v. Borek*, No. CV 17-540, 2019 WL 13249469, at *1-4 (W.D. La. Apr. 1, 2019) (finding no continuity where defendant was indicted and pleaded guilty based on criminal conduct underlying RICO claim). *Cf. Kash Oil & Gas Inc. v. Gulf Coast W. LLC*, No. 6:16-CV-00380, 2017 WL 1348536, at *8 (W.D. La. Feb. 8, 2017), *adopted*, 2017 WL 1347968 (W.D. La. Apr. 6, 2017) ("[W]here the enterprise's goals have been accomplished, and where those goals were achieved in a matter of months, through a discrete pattern of activity, there is no continuity.").

Plaintiffs rely extensively on *Abraham* for open-ended continuity. *See* ECF Nos. 33 at 11-12; 34 at 11-12. *Abraham* was a "RICO lawsuit by Indian citizens who

were recruited under false pretenses to become steelworkers in Louisiana." 480 F.3d

at 354. In exchange for the promise of "full-time employment for at least two years,"

each plaintiff paid large sums "often by obtaining loans in India at high interest

rates." *Id.* at 353-54. Upon arrival, however, the promised jobs were unavailable, the

plaintiffs' passports were confiscated, they were housed in poor conditions, and the

defendants farmed them out to other employers while skimming their wages. *Id.*

at 354. This scheme continued until the plaintiffs filed suit, alleging RICO violations

on top of human trafficking and other fraudulent acts. *Id.* Thus, when presented with

the question of whether the plaintiffs sufficiently stated a pattern of racketeering

activity, the Fifth Circuit found that standard amply satisfied:

> The Plaintiffs did not allege predicate acts extending over a few weeks
> or months and threatening no future criminal conduct. Rather, they
> alleged that the Defendants engaged in at least a two-year scheme
> involving repeated international travel to convince up to 200 or more
> Indian citizens to borrow thousands of dollars to travel to the United
> States only to find upon their arrival that things were not as they had
> been promised. Moreover, the allegations include not just Plaintiffs'
> recruitment in India but also their treatment in the United States. Unlike
> our precedents identifying a single illegal transaction, there are multiple
> victims, and there is no reason to suppose that this systematic
> victimization allegedly begun in November 2000 would not have
> continued indefinitely had the Plaintiffs not filed this lawsuit.

*Id.* at 356 (cleaned up).

Plaintiffs insist that the instant case is indistinguishable from *Abraham*, and

that Defendants' fraudulent actions will "continue indefinitely into the future if not

stopped." ECF No. 34 at 12. However, unlike *Abraham*, which involved hundreds

of plaintiffs and countless predicate acts, Plaintiffs—Bustos and Advance—allege no predicate acts before or after 2019, and all alleged acts occurred within a span of two months. No *ongoing* business is involved, as the alleged RICO enterprise here, Uberwurx, filed for bankruptcy on February 10, 2022. ECF No. 29 ¶ 16 n.3. Martinez and Hernandez were apparently indicted for related fraudulent activities in 2021. *Id.* ¶ 1 n.1. Plaintiffs did not file suit until August 10, 2022, well after those events. ECF No. 1. Plaintiffs fail to explain how any threat of continued criminal activity persists post-indictment and post-bankruptcy. Unlike the situation in *Abraham*, Plaintiffs' lawsuit here, filed six months *after* the alleged RICO enterprise filed for bankruptcy and roughly a year *after* Martinez and Hernandez's indictments, did not bring an end to Defendants' alleged criminal activity—it had long since terminated.

Even if Plaintiffs had not waived any argument for a closed period of repeated conduct by failing to raise it in their responses, the amended complaint is lacking. "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242. The Fifth Circuit has consistently refused to recognize closed-ended continuity for conduct spanning less than a year. *Malvino*, 840 F.3d at 232 (finding five months "too short"); *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) (seven months). Plaintiffs allege at most three predicate acts of wire and mail fraud—the bare minimum necessary to establish a pattern. *See* 18 U.S.C. § 1961(5) (defining "pattern of racketeering

activity" as "at least two acts . . . within ten years"). All alleged predicate acts pertain to the same transaction and occurred between March and May of 2019. ECF No. 29 ¶ 42. Under Fifth Circuit precedent, this two-month period is plainly insufficient.

Plaintiffs allege that Defendants' actions were "not a one-time occurrence," and Defendants have "victimized dozens of investors" through this scheme "since at least 2015," through the repeated us of "email, telephone, and wire transmissions." ECF No. 29 ¶ 22. However, such "conclusory statements" and "legal conclusions" in a complaint are not accepted as true. *Iqbal*, 556 U.S. at 678. Aside from these unsupported allegations, the amended complaint contains no well-pleaded facts supporting long-term conduct. The only other "victim" identified in the amended complaint is Crosswell, who attended the same meeting in January of 2019 and received the same email in March of 2019. ECF No. 29 ¶¶ 37, 41. But this same timeframe, even if it involved an email to *two* investors, still cannot satisfy the continuity element under a closed-period theory as a matter of law. *See Malvino*, 840 F.3d at 232 (finding no continuity despite trial evidence establishing "numerous acts of mail and wire fraud"). Plaintiffs fail to allege a *pattern* of racketeering activity— as opposed to a single instance of fraud—and the RICO claims should be dismissed.

### 4. *The Court lacks jurisdiction to retain Plaintiffs' state law claims after dismissal of their RICO claims.*

Because Plaintiffs' sole basis for federal court jurisdiction is federal question jurisdiction, *see* ECF No. 29 ¶ 17 (citing 28 U.S.C. § 1331), dismissal of Plaintiffs'

RICO claim requires dismissal of the remaining state law claims. When determining whether to retain jurisdiction after all federal claims have been dismissed, courts must "look to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). This is particularly true when all "federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 (5th Cir. 1992) (holding that district court "abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims" at motion-to-dismiss stage). It is squarely within the district court's discretion to "decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). Because the RICO claims should be dismissed and Plaintiffs assert no other federal claims, the Court should decline to exercise supplemental jurisdiction and dismiss the entire action.

Furthermore, diversity jurisdiction was not pleaded as an alternative basis for jurisdiction, nor does it appear to be available under these circumstances. Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity between the parties. *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004). For the purposes of diversity jurisdiction, the citizenship of an LLC "is determined by the citizenship

of all of its members," and the party asserting federal jurisdiction "must specifically allege the citizenship of every member of every LLC." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (quotations omitted). Plaintiff Advance is an LLC registered in Texas. ECF No. 29 ¶ 3. Bustos formed Advance for the purpose of investing, *id.* ¶¶ 30, 39, but all members are not alleged. Defendants Invierte, Invest and Migrate, RPC, M&D, Comar, 6 Holdings, and 6 Investments are also LLCs. *Id.* ¶¶ 4-14. Plaintiffs allege that Martinez is the "apparent sole member" of RPC and a member of Comar and 6 Investments, *id.* ¶ 23, but the members of other LLC parties are not identified. Accordingly, Plaintiffs fail to establish complete diversity among the parties, and the Court should decline to exercise jurisdiction over the remaining state law claims. Nonetheless, the Court addresses Plaintiffs' remaining state law claims below.

### C.    Plaintiffs Fail to State a Claim for Fraudulent Transfer.

To prevail on a claim under the Texas Uniform Fraudulent Transfer Act ("UFTA"), a plaintiff must prove that (1) they are a "creditor" with a "claim" against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204-05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The UFTA defines "creditor" as a person "who has a claim," and "debtor" as "a person

who is liable on a claim." TEX. BUS. & COM. CODE § 24.002(4), (6). The term "claim" is then defined as "a right to payment or property, whether or not the right is reduced to judgment." *Id.* § 24.002(3). Due to this broad definition, Texas courts have concluded that "a tort claimant is entitled to file causes of action under the UFTA based on pending, unliquidated tort claims." *Nwokedi*, 428 S.W.3d at 205.

A claim for actual fraudulent transfer under TEX. BUS. & COM. CODE § 24.005(a)(1) requires a showing of intent to defraud, while a claim for constructive fraudulent transfer under § 24.005(a)(2) or § 24.006(a) does not. *Campbell v. Tex. Tea Reclamation, LLC*, No. 3:20-CV-00090, 2021 WL 2211690, at *5-6 (S.D. Tex. May 6, 2021), *adopted*, 2021 WL 2211807 (S.D. Tex. June 1, 2021). The Fifth Circuit has not yet resolved the question whether Rule 9(b) or Rule 8(a) applies to fraudulent transfer claims. *In re Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019). *But see Campbell*, 2021 WL 2211690, at *5-6 (applying Rule 9(b) to actual fraudulent transfer and Rule 8(a) to constructive fraudulent transfer).

The Court previously found that Plaintiffs did not satisfy Rule 9(b) by failing to allege the property or amount of money transferred or when. R&R, ECF No. 27 at 22-23. The Court also found Plaintiffs pleaded only "bare, unsupported allegations," and thus failed to "provide Defendants the notice required under Rule 8." *Id.* at 23. In response, the amended complaint added this sole allegation:

"On information and belief, Martinez transferred the $175,000 Bustos paid him for the RhinoPro Mobile franchise to Defendants . . . after receipt in March and May of 2019." ECF No. 29 ¶ 65. Plaintiffs update the remainder of their UFTA claim to reference the $175,000 payment. *Id.* ¶¶ 67-68. The remaining allegations are unchanged, however, and Plaintiffs assert that "Defendant Martinez is a debtor" under the UFTA and "Plaintiffs are creditors who have claims." *Id.* ¶ 66.

Defendants seek dismissal of the UFTA claim on the basis that Plaintiffs have not established the requisite debtor/creditor relationship between any Plaintiff and any Defendant. ECF Nos. 30 at 18; 32 at 18. Plaintiffs counter by simply repeating the conclusory allegations that "Plaintiffs are 'creditors,'" and "Defendant Martinez is a 'debtor,'" without further explanation. ECF Nos. 33 at 16; 34 at 13. Plaintiffs then go outside the pleadings and argue, without attaching or citing any evidence in support, that "Martinez was both sued and insolvent at the time of Comar's selling of the Defendants principal headquarters, '1311 Price Plaza Dr. Katy, Texas' on November 11, 2023, for $2,350,000.00." ECF No. 33 at 16. Plaintiffs assert, again without evidence, that this "transfer was made with an intent to 'hinder, delay, or defraud.'" *Id.* Plaintiffs otherwise do not directly respond to Defendants' arguments.

Plaintiffs' UFTA claim fails, even if the Court only limits its analysis to the notice pleading requirements of Rule 8(a). First, while the amended complaint now alleges the "what" and "when" of their fraudulent transfer claim, those allegations

34

remain conclusory and unsupported. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not establish facial plausibility."). Plaintiffs plead no facts that would establish any creditor/debtor relationship. Instead, Plaintiffs allege that they "paid a fixed sum to Uberwurx," ECF No. 29 ¶ 30, not Martinez or any other *named* Defendant. Plaintiffs further allege that, "[p]er the agreements with Defendants, Bustos provided $25,000 on April 4, 2019 and $152,000 on or about May 7, 2019." *Id.* ¶ 42 (footnotes omitted).[30] But the only "agreements" alleged are with nonparties Uberwurx and MCM. *Id.* ¶ 29. The Court therefore agrees that the amended complaint fails to include any factual allegations—as opposed to conclusory labels—that would support an inference that any named Defendant is a "debtor" of any Plaintiff.

Furthermore, the definition of "creditor" under the UFTA requires a "claim," and Plaintiffs fail to identify what that "claim" is. Plaintiffs allege the $175,000 payment is the relevant "transfer" for purposes of their UFTA claim. ECF No. 29 ¶ 65. However, aside from the conclusory allegation that they "have claims against the debtor," *id.* ¶ 66, Plaintiffs do not specify any further. Assuming the relevant

---

[30] Despite referencing two exhibits in support, *see* ECF No. 29 ¶ 42 nn.7-8, nothing is attached to the amended complaint. Exhibit 1 to the original complaint shows a $25,000 payment from Bustos to Uberwurx on April 4, 2019. ECF No. 1-1. Exhibit 2 shows an outgoing $152,000 wire transfer by Advance on May 7, 2019, but the recipient is unidentified. ECF No. 1-2.

"claims" are indeed Plaintiffs' various fraud claims asserted here, *see Nwokedi*, 428 S.W.3d at 205 (noting UFTA claim can be "based on pending, unliquidated tort claims"), the Court questions how Plaintiffs can remain a "creditor" if those tort claims are dismissed? Although no party has cited any relevant authority on this point, the plain language of the statute appears to foreclose that result, as Plaintiffs can have no "right to payment or property" if all tort claims are dismissed. *See* TEX. BUS. & COM. CODE § 24.002(3)-(4). The Court ultimately recommends dismissal of *all* tort claims under Rule 9(b) and on other grounds, meaning Plaintiffs have no "claims" and thus cannot be a "creditor" or pursue relief under the UFTA.

Finally, Plaintiffs' response to the motions to dismiss completely misses the mark. Even setting aside the reality that Plaintiffs' new allegations are unsupported and uncontained in any pleading, they are also irrelevant. Plaintiffs apparently insist that Comar's sale of the building Uberwurx formerly used is itself a fraudulent transfer. ECF No. 33 at 16. This is irrelevant, however, as Plaintiffs have not asserted a claim for fraudulent transfer based on this post-complaint activity. Even if they could amend further to include such allegations, as noted above, Plaintiffs have not established that Comar or any Defendant is a "debtor," nor do Plaintiffs have any legitimate "claims." Thus, Plaintiffs claims under the UFTA should be dismissed.

### D.    Plaintiffs Fail to State Any Remaining Fraud-Based Claims.

Defendants' renewed motions to dismiss do not seek dismissal of Plaintiffs'

claims for common law fraud, fraudulent inducement, or violation of the DTPA. Nonetheless, the Court observes that its ruling under Rule 9(b) that Plaintiffs have failed to plead any fraudulent statements with particularity for purposes of RICO also requires dismissal of Plaintiffs remaining state law claims. The Court further notes other deficiencies in the fraud pleadings under Rule 9(b).

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as 'an underlying contract which was induced.'" *Stanissis v. Dyncorp Int'l LLC*, No. 3:14-CV-2736-D, 2016 WL 4159397, at *5 (N.D. Tex. Aug. 5, 2016) (quotation omitted). Claims of fraud must comport with Rule 9(b)'s particularity requirement. *Sanderson v. Allstate Fire & Cas. Ins. Co.*, No. CV H-22-3536, 2023 WL 417478, at *2 (S.D. Tex. Jan. 25, 2023).

The Court previously focused on the third and fourth elements of fraud, *i.e.*, falsity and knowledge of falsity, and only as it pertained to the 11% rate of return theory. R&R, ECF No. 27 at 14-18. As noted above, Plaintiffs still fail to explain why those statements were fraudulent when made, and their newly alleged theories of fraud likewise fail to satisfy Rule 9(b) as to those elements. However, Plaintiffs have also failed to adequately allege many of the other elements of fraud.[31]

For example, Plaintiffs' fact allegations undercut materiality for many of the alleged representations "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quotation omitted). Plaintiffs cursorily allege that "[t]he representations were material," ECF No. 29 ¶ 55, but with no explanation or factual support as to each alleged representation. However, despite alleging that Defendants perpetrated an elaborate immigration fraud scheme, ECF No. 29 ¶¶ 27, 30, 36, Plaintiffs do not allege that Defendants ever pitched the investment to them as a means of obtaining a visa or ever mentioned immigration at all, *see id.* ¶¶ 37-43. Plaintiffs disclaim that position, as "Bustos was

---

[31] Although Plaintiffs mechanically reassert their opposition to the economic loss rule, ECF No. 33 at 19-20, none of the Defendants reargue that issue in their renewed motions. The Court has already ruled on the inapplicability of the economic loss rule under these circumstances, ECF No. 27 at 15-16, and the briefing offers no rationale for reconsideration.

not interested in obtaining a visa, he was interested in the investment opportunity." *Id.* ¶ 33. But the only explanation for *why* Bustos was interested in becoming a "franchise owner" or needed "to be involved in the day-to-day business operations" was "to be eligible for a visa." *Id.* ¶ 44. Accordingly, Plaintiffs' ability to "manage the franchise" or run "vehicles, store, and inventory," *id.* ¶ 56, was only *material* insofar as it was necessary for a visa, which was allegedly never a factor in Plaintiffs' decision to invest.[32] In other words, even if Plaintiffs had pleaded false statements with particularity, those would be *immaterial*, and Plaintiffs' conclusory allegations would still fall short of Rule 9(b)'s heightened pleading standard for fraud claims.

More importantly, Defendants argue that Plaintiffs have failed to allege any reasonable reliance in connection with their fraud claims. ECF Nos. 30 at 10-11; 31 at 10; 32 at 10-11. Plaintiffs do not dispute or even address this contention. Indeed, Plaintiffs disclaim the need to establish reliance, as it is not an element for wire or mail fraud. ECF Nos. 33 at 7-8; 34 at 8. However, Plaintiffs wholly overlook their claims for common law fraud and fraudulent inducement, despite acknowledging

---

[32] Even in response to the motions to dismiss, Plaintiffs disclaim any desire to receive a franchise or a van, as they only "seek damages for . . . the market value of what was represented to them," and the 11% "rates of return." ECF No. 33 at 19. While the alleged 11% rate of return is ostensibly a material representation, Plaintiffs never explain how the "franchise" representation is material outside the context of visa eligibility. ECF No. 29 ¶ 44. It is not immediately obvious how an allegedly fraudulent "franchise" materially differs from or is inherently more valuable than an allegedly fraudulent "license" if the rate of return is capped at 11% regardless.

"reliance" as an element. ECF No. 33 at 19.[33] Indeed, the pleadings undercut any potential reliance, as the alleged representations—such as the "franchise" being a "license"—were allegedly not contained in the signed license agreement. ECF No. 29 ¶¶ 42-43; *cf. Crosswell*, 2023 WL 6206911, at *6 (dismissing near identical fraud claims on the absence of justifiable reliance, stating: "To allow Plaintiffs to continue with a fraud claim when they were fully aware of facts that made the alleged representation false would render the 'justifiable reliance' element of a fraud claim meaningless."). Because Plaintiffs do not plead detrimental reliance on any alleged representation in the amended complaint, and the responses fail to address the issue, Plaintiffs' various fraud claims should be dismissed.

### E.   Plaintiffs Fail to State a Claim for Common Law Conspiracy.

Plaintiffs also reassert their claim for civil conspiracy. ECF No. 29 ¶¶ 71-72. "In Texas, a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). Under Texas law, civil conspiracy is a "derivative tort," meaning it depends on some underlying tort or other illegal act "and survives or fails alongside it." *Agar Corp.,*

---

[33] Detrimental reliance is also a necessary element for Plaintiffs' DTPA claim. TEX. BUS. & COM. CODE § 17.50(a)(1)(B) (creating a cause of action when the deceptive practice "is relied on by a consumer to the consumer's detriment"); *cf. Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016) (noting that DTPA claims are subject to Rule 9(b) in federal courts). Although Defendants do not renew their arguments on the DTPA, a finding that Plaintiffs failed to plead reliance with particularity necessarily mandates dismissal of the DTPA claim as well.

*Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-41 (Tex. 2019) ("Our use of the word 'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it."). The Court previously recommended dismissal of Plaintiffs' standalone conspiracy claim for failure to state any other viable tort claim. R&R, ECF No. 27 at 24. The Court finds itself in the same situation, because Plaintiffs have not met their burden on any of their underlying claims in their amended complaint, their conspiracy claim also fails. Plaintiffs' derivative claim for common law conspiracy should be dismissed.

## IV.   PLAINTIFFS SHOULD BE DENIED LEAVE TO AMEND.

Plaintiffs preemptively seek leave to amend their claims against Defendants. ECF Nos. 33 at 6; 34 at 7. Courts are directed to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). However, leave to amend is within the sound discretion of the court and can appropriately be denied when "it is clear that the defects [of a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Leave to amend may be denied for "repeated failure to cure deficiencies by amendments previously allowed." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nor does a court abuse its discretion by denying leave when the request is cursory and non-specific. *See id.* at 590-91 (collecting cases).

The Court already afforded Plaintiffs an opportunity to replead. R&R, ECF No. 27 at 24-25. Plaintiffs responded with only minor changes. *See* ECF No. 29. At most, Plaintiffs have a claim for breach of contract stemming from the management and license agreements with nonparties MCM and Uberwurx. *See CADG Erwin Farms, LLC v. Ipour*, No. 3:22-CV-02896-M, 2024 WL 1394501, at *5 (N.D. Tex. Mar. 31, 2024) ("Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud." (quoting *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999))). Plaintiffs apparently have not brought those claims here because the MCM agreement contains an arbitration clause, and Uberwurx has filed for bankruptcy. ECF No. 29 ¶ 16 nn.2-3. Instead, in the instant action, Plaintiffs attempt to sue every entity tangentially related to those two contracts in a transparent effort to circumvent the limits of arbitration and bankruptcy. Yet, after two attempts at pleading their RICO and related fraud claims, Plaintiffs still have not pleaded *any* fraudulent misrepresentations with particularity. Further, despite ordering Plaintiffs to allege with specificity "what actions Invierte, Ms. Miranda, Invest and Migrate, and M&D took that would expose them to liability," R&R, ECF No. 27 at 25, the amended complaint still contains no direct allegations against any named Defendants other than Hernandez and Martinez, *see* ECF No. 29 ¶¶ 37-43. The Court concludes that Plaintiffs have pleaded their best case. *See Brewster v. Dretke*, 587 F.3d 764,

768 (5th Cir. 2009) ("Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'").

Even if the Court were inclined to look upon Plaintiffs repeated failure to cure deficiencies with leniency, Plaintiffs' request for leave to amend is insufficient. Plaintiffs argue in the alternative that "even *if* Plaintiffs' claims do not meet Rule 9(b) standard, [*sic*] dismissal would be improper at this stage in the proceedings." ECF Nos. 33 at 6; 34 at 7 (emphasis in original). The Fifth Circuit has rejected such boilerplate requests as insufficient, instead requiring the moving party to provide "some notice of the nature of his or her proposed amendments." *Thomas*, 832 F.3d at 590. Plaintiffs attach no second amended complaint, and they offer no indication of what they might amend. The Court surmises from this silence that no amendment is possible, and thus leave to amend should be denied as futile.

## V.   CONCLUSION

Therefore, the Court **RECOMMENDS** that Defendants' motions to dismiss, ECF Nos. 30, 31, 32, should be **GRANTED** in all respects. The Court **FURTHER RECOMMENDS** that Plaintiffs' amended complaint, ECF No. 29, should be dismissed as to all Defendants *with prejudice*.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); F**ED**. R. C**IV**. P. 72(b). Failure to file timely objections will preclude appellate review**

of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 3, 2024, at Houston, Texas.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**